In re AMERICAN MEDICAL SYSTEMS, INC.; Pfizer, Inc., Petitioners.

Nos. 95–3303, 95–3327.

United States Court of Appeals, Sixth Circuit.

Argued July 25, 1995.

Decided Feb. 15, 1996.

Steven Glickstein, David Klingsberg (argued and briefed), Kaye, Scholer, Fierman, Hays & Handler, New York City, for Petitioners.

Stanley M. Chesley (argued), Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Arthur R. Miller (argued), Cambridge, MA, for Respondents.

Before: CONTIE, RYAN, and SUHRHEINRICH, Circuit Judges.

SUHRHEINRICH, Circuit Judge.

■ Petitioners American Medical Systems ("AMS") and Pfizer, Inc., defendants below, both seek a writ of mandamus directing the district court to vacate orders conditionally certifying a class in a products liability suit involving penile prostheses. This court has held that class certification is generally not the kind of subject matter for which mandamus relief is available on the grounds that class certification decisions are reviewable on direct appeal.[1] However, on the extraordinary facts of this case we find that the district judge's disregard of class action procedures was of such severity and frequency so as to warrant its issuance here.

**I.**

Since 1973, AMS, a wholly-owned subsidiary of Pfizer, has manufactured and marketed penile prostheses, which are used to treat impotence. The plaintiffs, respondents in this proceeding, all use or have used AMS' products.

Plaintiff Paul Vorhis was implanted with an AMS penile prosthesis on April 25, 1989. It failed to function in January of 1993, and Vorhis had the prosthesis replaced with an AMS 700 Ultrex prosthesis in May 1993. This second prosthesis caused him pain and discomfort, and plaintiff had it removed in August of 1993 and replaced with a third AMS prosthesis, with which he is presently satisfied. Vorhis filed this action against defendant AMS in the Southern District of Ohio on December 5, 1994, individually and on behalf of others similarly situated who suffered damages as a result of the implantation of penile prostheses manufactured by AMS. The complaint alleges strict product liability, negligence, breach of implied and express warranties, fraud and punitive damages, and seeks a declaratory judgment for medical monitoring.

On December 29, 1994, Vorhis filed a motion for class certification. On January 5, 1995, the district judge entered an order setting a hearing for January 27, 1995, later extended to February 24, 1995.

On January 20, 1995, AMS moved to stay or defer a ruling on the class certification question, based on virtually identical actions that had been previously filed. AMS informed the district judge that *Miles v. American Medical Sys., Inc. & Pfizer Inc.*, No. C–94–1808 (N.D.Cal.), filed in May of 1994,[2] was

---

**1.** *See In re NLO, Inc.*, 5 F.3d 154, 159 (6th Cir.1993).

**2.** The plaintiffs in *Miles v. American Medical Sys., Inc. & Pfizer*, No. C–94–1808 (N.D.Cal.), had previously filed a motion before the Judicial Panel on Multidistrict Litigation seeking transfer and

scheduled for hearing on the class certification question scheduled on March 3, 1995,[3] and that three other earlier actions, now consolidated in district court in Minnesota,[4] had a class certification hearing date of May 5, 1995. On February 14, 1995, AMS also filed a motion to dismiss based on lack of personal jurisdiction or to transfer based on improper venue. The district judge never ruled on either motion.

After expedited discovery, AMS submitted a brief in opposition to the class certification motion on February 17, 1995. Plaintiff filed his reply brief on February 23, 1995.

At the class certification hearing, the district judge indicated that he was concerned principally with the question of whether Vorhis was an appropriate class representative, and directed AMS to proceed first. AMS challenged Vorhis' suitability as a class representative on several grounds. First, AMS pointed out that Vorhis had a history of psychiatric problems, for which he received total and permanent disability benefits from the State of Ohio. AMS introduced reports prepared by Vorhis' psychiatrist and psychologist showing that Vorhis suffered from memory loss, impaired concentration, and a lack of common sense, all factors which AMS maintained would interfere with plaintiff's ability to make rational decisions on behalf of other members of the purported class. AMS also contended that Vorhis was an unsuitable representative because his need for the prosthesis stemmed from a unique condition, Peyronie's disease, or curvature of the penis. Third, AMS argued that because Vorhis had a problem with only one of the ten types of prostheses AMS manufactured, he could not represent those who had problems with the other kinds of devices.

In response to AMS' first argument, plaintiff offered the deposition testimony of his treating psychiatrist, Dr. Edelstein, who opined that Vorhis was competent to withstand the rigors of trial. As to defendant's third argument, plaintiff countered that the basic design of all ten devices was the same. Plaintiff pointed to a section 510(k) notice document[5] for the AMS 700 Ultrex Penile Prosthesis (the second AMS prostheses used by Vorhis) stating that all but one of the device's components were indistinguishable to those previously marketed. Vorhis did not directly respond to AMS' second argument.

The judge made no factual findings but took the matter under advisement. However, at the conclusion of oral argument, the district judge queried:

> THE COURT: "Do you agree that if [plaintiff's counsel] adds class plaintiffs, that argument's [regarding Vorhis' psychological fragility] moot?"

> [AMS' COUNSEL]: "If those class plaintiffs are appropriate, absolutely."

On February 28, 1995, the district judge issued a two-page order stating, "based upon the information currently available to it, that class certification appears to be the most efficient and appropriate manner in which to handle this matter," and promised a "further order outlining the reasoning supporting that conclusion" to follow. The order was conditional, subject to decertification at any time, and conditioned further "upon class counsel acting to amend the complaint within thirty (30) days ... in order to add additional plaintiffs who qualify as appropriate class representatives and who are free of the alleged infirmities on which Defendant's objections

---

consolidation of all federal AMS penile prostheses cases pursuant to 28 U.S.C. § 1407. The panel denied the motion on September 30, 1994. *In re Penile Implants Prod. Liab. Litig.*, MDL No. 1020 (J.P.M.L. Sept. 30, 1994).

**3.** At the hearing on March 3, the court in *Miles* denied class certification.

**4.** *Turner v. American Medical Sys., Inc.*, No. 2:94–1313–02 (D.S.C.) was filed on May 11, 1994, in South Carolina, and transferred to Minnesota. *Pipia v. American Medical Sys., Inc.*,

No. 4–94–521 (D.Minn), was filed on June 16, 1994. *Moe v. American Medical Sys., Inc. & Pfizer Inc.*, No. 4–94–549 (D.Minn.) was filed on June 24, 1994.

**5.** Pursuant to the Medical Device Act of 1976, amended in the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. §§ 301–95, a medical device covered under the statute may be marketed pursuant to a premarket approval, or pursuant to a section 501(k) finding of "substantial equivalence." 21 U.S.C.A. § 360c(i) (West Supp.1995).

to the suitability of the current Plaintiff/class representative are premised." *Id.*

On March 10, 1995, Vorhis filed an amended complaint, adding three additional plaintiffs as class representatives and Pfizer as an additional defendant.[6] AMS and Pfizer were both served with the amended complaint on March 13, 1995. Plaintiff neither sought nor obtained leave of court to add Pfizer as a defendant, as required by Federal Rule of Civil Procedure 15(a).

Without any further discovery, briefing, or argument, the district judge issued an amended order of class certification on March 16, 1995. The judge found that all the prerequisites of Fed.R.Civ.P. 23(a)[7] had been met, and that the class was maintainable under Fed.R.Civ.P. 23(b)(3)[8] because common questions of law or fact predominated. As to "numerosity," the court held:

It is asserted that the class to be certified consists of 15,000 to 120,000 persons. The United States Court of Appeals for the Sixth Circuit has previously held that a class of 35 was sufficient to meet the numerosity requirement. *Afro American Patrolmen's League v. Duck,* 503 F.2d 294 (6th Cir.1974).

Amended Order dated March 16, 1995, at 2. Regarding "commonality," the judge stated:

As persons who have undergone implantation of Defendants' inflatable penile prostheses [Plaintiffs] appear to have a common right to assert a claim against Defendants.

*Id.* at 3. For the third requirement of subsection (a), "typicality," the judge held:

The proposed representatives of the class assert claims that are typical of the class in

---

**6.** The first amended complaint states in relevant part:

 2. Plaintiff Paul Vorhis is a resident of Middletown, Ohio and has resided in Middletown, Ohio at all times relevant to this litigation. On or about April 25, 1989, Mr. Vorhis was implanted with a American Medical Systems, Inc. 700 CX penile prosthesis. During January of 1993, the prosthesis ceased to function properly. Mr. Vorhis had the prosthesis explanted in February of 1993 and replaced with a American Medical Systems, Inc. 700 Ultrex prosthesis in May of 1993. During August of 1993, Mr. Vorhis had his second American Medical Systems, Inc. prosthesis removed and replaced with another prosthesis manufactured by Defendant American Medical Systems, Inc.

 3. Plaintiff Robert York is a resident of Cincinnati, Ohio. Plaintiff Robert York was implanted with a American Medical Systems, Inc. 700 inflatable penile prosetheis [sic] in January 1990 while a patient at Cincinnati Bethesda Oak Hospital. During the time that he has possessed the American Medical Systems, Inc. prosthesis, the prosthesis has malfunctioned. Currently the posthesis [sic] fails to fully inflate.

 4. Plaintiff James Kennedy is a resident of Garden City, Georgia. Plaintiff James Kennedy was implanted with a American Medical Systems, Inc. Ultrex inflatable penile prosthesis. On June 6, 1993, the prosthesis malfunctioned because the cylinders and pump leaked. On June 16, 1993, the defective components were explanted and replaced with new components from a American Medical Systems, Inc. 700 Ultrex Plus prosthesis.

 5. Plaintiff John W. Gordy is a resident of Rockville, Maryland. Mr. Gordy was implanted with a American Medical Systems, Inc. Hydroflex penile prosthesis on or about August 9,

1985. In 1993, the Hydroflex prosthesis failed and was explanted. On February 1, 1993, Mr. Gordy received a American Medical Systems, Inc. Dynaflex penile prosthesis. As of March 1, 1995, the Dynaflex prosthesis is not functioning because only one side inflates.

**7.** (a) **Prerequisites to a Class Action.** One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**8.** (b) **Class Actions Maintainable.** An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition:

 . . . .

 (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

that all plaintiffs allege injury from the American Medical Systems, Inc./Pfizer, Inc. inflatable penile prostheses manufactured and distributed by Defendants. These claims are similar enough to those of the class that the representatives will adequately represent such class. *General Telephone v. Falcon,* 457 U.S. 147, 157, 102 S.Ct. 2364 [2370], 72 L.Ed.2d 740 (1982).

For purposes of the determination of liability at least, the claims of the representatives are the claims of the class. (Footnote omitted.)

*Id.* On the question of "adequate representation," the judge opined that

This Court has considered the qualifications of Plaintiffs' counsel and considers that they have sufficient experience and ability to fairly and adequately protect the interests of the class. *Senter v. General Motors,* 532 F.2d 511 (6th Cir.1976).

*Id.* Finally, the judge found the class maintainable under Rule 23(b)(3), stating:

There is an assertion here that there may be thousands of persons who are in the same position as Plaintiffs. Plaintiffs have asserted causes of action in fraudulent and negligent misrepresentation, failure to warn, negligence, strict liability and breach of warranty, both expressed and implied. Without determining the merits of Plaintiffs' claims, it is clear that a class action is far superior to numerous individual determinations of the same rights.

*Id.* at 4. The district judge therefore certified the class as:

All persons residing in the United States, who have had inflatable penile prostheses developed, manufactured and/or sold by Defendant American Medical Systems, Inc. and/or Defendant Pfizer, Inc. implanted in their bodies.

*Id.* (Attachment A).

In the notice attached to the class, the district judge named Vorhis as one of the parties that was bringing the class action lawsuit on behalf of all members of the class.

On March 13, 1995, AMS filed a petition for writ of mandamus pursuant to 28 U.S.C. § 1651 and Fed.R.App.P. 21 asking this Court to set aside the district court's order of February 28. AMS filed a supplemental petition on March 21, 1995, in response to the amended order certifying the class. Pfizer submitted a separate petition for writ of mandamus on March 21, 1995, challenging the March 16 amended order of certification which made it a defendant only three days after it had been served and without any opportunity to be heard. On April 7, 1995, this court, pursuant to Fed.R.App.P. 21, issued an order requesting a response from the district judge and directing all other parties to respond to the defendants' petitions for writ of mandamus.[9]

Meanwhile, defendants sought a stay of the March 16 amended order of class certification in the district court, which was denied on March 24, 1995. This court also granted a stay of the March 16 order, to the extent that it directed notice to the members of the class.

## II.

The All Writs Statute creates an exception to the final judgment rule, which rule is the "dominant principle" of federal appellate jurisdiction. 9 James W. Moore & Bernard J. Ward, *Moore's Federal Practice* ¶ 110.26 (2d ed. 1995). Section 1651(a) authorizes "[t]he Supreme Court and all courts established by Act of Congress" to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The writ provides some flexibility in instances where rigid enforcement of the final judgment rule would result in injustice. 9 *Moore, supra,* ¶ 110.26.

The Supreme Court, surveying its precedent on the subject, recently described the various uses of the writ:

"The traditional use of the writ in aid of appellate jurisdiction both at common law and in the federal courts has been to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its

---

9. Under Fed.R.Civ.P. 21, the district judge respondent may decline to appear in the proceed- ing, and the petition shall not be taken as admitted.

duty to do so." *Roche v. Evaporated Milk Assn.* 319 U.S. 21, 63 S.Ct. 938, 87 L.Ed. 1185 (1943). *See also Will v. Calvert Fire Ins. Co.,* 437 U.S. 655, 661, 98 S.Ct. 2552 [2556], 57 L.Ed.2d 504 (1978); *Kerr v. United States District Court, for Northern District of California,* 426 U.S. 394, 402, 96 S.Ct. 2119 [2123], 48 L.Ed.2d 725 (1976); *Will v. United States,* 389 U.S. 90, 95, 88 S.Ct. 269 [273], 19 L.Ed.2d 305 (1967).... Although "we have not limited the use of mandamus by an unduly narrow and technical understanding of what constitutes a matter of 'jurisdiction,'" *Kerr, supra,* at 402, 96 S.Ct. 2119 [at 2124], 48 L.Ed.2d 725; *see Will v. United States, supra,* at 95, 88 S.Ct. 269 [at 273], 19 L.Ed.2d 305, we have required that petitioners demonstrate a "clear abuse of discretion," *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 383, 74 S.Ct. 145 [148], 98 L.Ed. 106 (1953), or conduct amounting to "usurpation of [the judicial] power," *De Beers Consolidated Mines, Ltd. v. United States,* 325 U.S. 212, 217, 65 S.Ct. 1130 [1133], 89 L.Ed. 1566 (1945), to be entitled to issuance of the writ. To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek, *see, e.g., Kerr, supra,* at 403, 96 S.Ct. 2119 [at 2124], 48 L.Ed.2d 725; *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 35, 101 S.Ct. 188 [190], 66 L.Ed.2d 193 (1980)(per curiam), and carry "the burden of showing that [their] right to issuance of the writ is 'clear and indisputable,'" *Bankers Life, supra,* at 384, 74 S.Ct. 145 [at 148], 98 L.Ed. 106, *quoting United States [ex rel Bernardin] v. Duell,* 172 U.S. 576, 582, 19 S.Ct. 286 [287], 43 L.Ed. 559 (1899).

*Mallard v. United States Dist. Court,* 490 U.S. 296, 308–09, 109 S.Ct. 1814, 1822, 104 L.Ed.2d 318 (1989).

■ This Court adopted the following framework for determining the propriety of mandamus relief in *In re Bendectin Prod. Liab. Litig.,* 749 F.2d 300 (6th Cir.1984):

(1) The party seeking the writ has no other adequate means, such as direct appeal, to attain the relief desired.

(2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (This guideline is closely related to the first).

(3) The district court's order is clearly erroneous as a matter of law.

(4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules.

(5) The district court's order raises new and important problems, or issues of law of first impression.

*Id.* at 304 (quoting *Bauman v. United States Dist. Court,* 557 F.2d 650, 654–55 (9th Cir. 1977)). These guidelines need not all point in the same direction for issuance of the writ to be proper. *Id.* at 306 (footnote omitted). "[A] proper disposition will often require a balancing of conflicting factors.'" *Id.* at 304 (quoting *Bauman,* 557 F.2d at 655). Thus, the factors in *Bendectin* are considerations to be balanced, not prerequisites that must all be met.

Petitioners maintain that a writ should issue because the district court: 1) did not satisfy the Sixth Circuit's standard for class certification; 2) did not have a factual record establishing the elements of Rule 23; 3) certified a class action although it found that the only named plaintiff is not an adequate class representative; 4) did not define the class; 5) entered the order in disregard of preexisting scheduling orders in earlier-filed federal cases presenting the same issue; 6) made an oft-repeated error; and 7) reached a result that will have adverse consequences for medical care and judicial administration.

### III.

#### A.

We begin our analysis by considering whether the lower court committed patent error (the third *Bendectin* factor). We address in tandem petitioners' contentions that the lower court disregarded the standards for class certification and certified a class despite the absence of an adequate factual record establishing the elements of Rule 23.

■ The Supreme Court has required district courts to conduct a "rigorous analy-

sis" into whether the prerequisites of Rule 23 are met before certifying a class. *General Tel. Co. v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982). The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23. *Gulf Oil Co. v. Bernard,* 452 U.S. 89, 100, 101 S.Ct. 2193, 2200, 68 L.Ed.2d 693 (1981); *Cross v. National Trust Life Ins. Co.,* 553 F.2d 1026, 1029 (6th Cir.1977)("district court has broad discretion in determining whether a particular case may proceed as a class action so long as it applies the criteria of Rule 23 correctly"); *Boggs v. Divested Atomic Corp.,* 141 F.R.D. 58, 62–63 (S.D.Ohio 1991)(same). *See generally In re NLO, Inc.,* 5 F.3d 154, 157 (6th Cir.1993)(district court's inherent power to manage docket must be exercised in manner that is in harmony with the Federal Rules of Civil Procedure).

▮▮▮ A class is not maintainable as a class action by virtue of its designation as such in the pleadings. *Cash v. Swifton Land Corp.,* 434 F.2d 569, 571 (6th Cir.1970). Although a hearing prior to the class determination is not always required, "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Falcon,* 457 U.S. at 160, 102 S.Ct. at 2372. This court has stated that:

> Mere repetition of the language of Rule 23(a) is not sufficient. There must be an adequate statement of the basic facts to indicate that each requirement of the rule is fulfilled. Maintainability may be determined by the court on the basis of the pleadings, if sufficient facts are set forth, but ordinarily the determination should be predicated on more information than the pleadings will provide.... The parties should be afforded an opportunity to present evidence on the maintainability of the class action.

*Weathers v. Peters Realty Corp.,* 499 F.2d 1197, 1200 (6th Cir.1974) (citation omitted).

▮▮▮ The party seeking the class certification bears the burden of proof. *See Falcon,* 457 U.S. at 161, 102 S.Ct. at 2372; *Senter v. General Motors Corp.,* 532 F.2d 511, 522 (6th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 182, 50 L.Ed.2d 150 (1976). Subsection (a) of

Rule 23 contains four prerequisites which must *all* be met before a class can be certified. Once those conditions are satisfied, the party seeking certification must also demonstrate that it falls within at least *one* of the subcategories of Rule 23(b). We shall examine each of these factors individually.

## 1.

▮▮▮ The first subdivision of Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable." "The reason for [the impracticability] requirement is obvious. Only when joinder is impracticable is there a need for a class action device." 1 Herbert B. Newberg & Alba Conte, *Newberg on Class Actions,* § 3.01, at 3–4 (3d ed. 1992). There is no strict numerical test for determining impracticability of joinder. *Senter,* 532 F.2d at 523 n. 24 (and citations therein). Rather, "[t]he numerosity requirement requires examination of the specific facts of each case and imposes no absolute limitations." *General Tel. Co. v. EEOC,* 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980). When class size reaches substantial proportions, however, the impracticability requirement is usually satisfied by the numbers alone. 1 *Newberg, supra,* § 3.05, at 3–26.

In the original complaint, Vorhis alleged that although he was unable to state the exact size of the class, "members of the class number at least in the thousands." The first amended complaint modified that estimate to "over 150,000." The district judge's finding of a class of 15,000 to 120,000 persons may not be unreasonable, especially since AMS has been producing penile prostheses for over twenty years, and has the largest share of the penile implant market. *See Senter,* 532 F.2d at 523 (district judge may consider reasonable inferences drawn from facts before him at early stage in proceedings in determining whether class is sufficiently numerous to make joinder impracticable). Defendant, moreover, does not contest this factor. Although the district judge made no findings but merely rubberstamped the plaintiffs' assertions that such potential class members truly exist, we do not hold that this

factor is not established because petitioners do not contest it.

### 2.

■■■■ Rule 23(a)(2) requires that for certification there must be "questions of law or fact common to the class." The commonality requirement is interdependent with the impracticability of joinder requirement, and the "tests together form the underlying conceptual basis supporting class actions." 1 *Newberg, supra,* § 3.10, at 3–47. As the Supreme Court described in *Falcon:*

> The class-action was designed as "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki,* 442 U.S. 682, 700–01, 99 S.Ct. 2545, 2557–2558, 61 L.Ed.2d 176. Class relief "is 'peculiarly appropriate' when the 'issues involved are common to the class as a whole' and when they 'turn on questions of law applicable in the same manner to each member of the class." *Id.* at 701, 99 S.Ct.,

at 2557. For in such cases, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an economical fashion under Rule 23." *Ibid.*

457 U.S. at 155, 102 S.Ct. at 2369. The commonality test "is qualitative rather than quantitative, that is, there need be only a single issue common to all members of the class." 1 *Newberg, supra,* § 3.10, at 3–50. *See also Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1197 (6th Cir.1988)("mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible"). But, as we shall see, there is an important check on this requirement under Rule 23(b)(3).

Plaintiffs' complaint [10] and class certification motion [11] simply allege in general terms

10. As to questions of law and fact common to the class, the amended complaint alleges:

 a. Whether the inflatable penile implants were defective and dangerous;
 b. Whether Defendants misrepresented to the FDA facts concerning inflatable penile implants;
 c. Whether Defendant misrepresented to the medical community information regarding the inflatable penile implants;
 d. Whether Defendants misrepresented to members of the class and the public information regarding the inflatable penile implants;
 e. Whether AMS is strictly liable for injuries to Class Members;
 f. Whether the penile implants were improperly designed;
 g. Whether the design defects existed at the time the Defendant placed the penile implants into the stream of commerce;
 h. Whether the design defects caused certain problems and symptoms;
 i. Whether the penile implants were unreasonably dangerous due to the defects;
 j. Whether Defendant was negligent in testing the implants;
 k. Whether Defendant was negligent in designing the implants;
 l. Whether Defendant was negligent in changing a prior design;
 m. Whether Defendant was negligent in selecting materials for the implants;
 n. Whether Defendant was negligent in failing to warn Plaintiffs of the dangerous and defective condition of its implants;

 o. Whether Defendant was negligent in failing to design out known dangerous conditions;
 p. Whether Defendant was negligent in failing to use ordinary care with respect to its design, manufacturing, marketing and dale [sic] of its penile implants;
 q. Whether Defendant is guilty of gross negligence with respect to its penile implant products; and
 r. Whether Defendant is liable for punitive damages.

11. The "Memorandum in Support of Plaintiff's Motion for Class Certification" states in relevant part:

 In this case, questions of law and fact are common to each class member. Each of the potential class members suffered injury as a result of their exposure to a defective product. Each class member was harmed as a result of the same pattern of conduct of the Defendant. The issues that this Court ultimately must decide will affect each class member in the same manner. The fact that the Defendant engaged in a common course of conduct that resulted in injury to the class establishes that common issues of law and fact exist.... The circumstances of this case establish that the common liability questions are appropriate for a trial in the class setting. The primary focus of the litigation will be Defendant's conduct when it researched, designed, marketed, manufactured and sold the penile implants. To the extent that the finder of fact determines that the Defendant either intentionally or negligently sold '

that there are common issues without identifying any particular defect common to all plaintiffs. Yet AMS introduced uncontradicted evidence [12] that since 1973 AMS has produced at least ten different models, and that these models have been modified over the years.[13] Plaintiffs' claims of strict liability, fraudulent misrepresentation to both the FDA and the medical community,[14] negligent testing, design and manufacture, and failure to warn will differ depending upon the model and the year it was issued.

Proofs as to strict liability, negligence, failure to warn, breach of express and implied warranties will also vary from plaintiff to plaintiff because complications with an AMS device may be due to a variety of factors, including surgical error, improper use of the device, anatomical incompatibility, infection, device malfunction, or psychological problems.[15] Furthermore, each plaintiff's urologist would also be required to testify to determine what oral and written statements were made to the physician, and what he in turn told the patient, as well as to issues of reliance, causation and damages. *See generally In re Northern Dist. of Calif., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847, 854 (9th Cir.1982)(on issues of negligence,

strict products liability, adequacy of warnings, fraud and conspiracy, "commonality begins to be obscured by individual case histories"), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983).

▮ The amended complaint reflects that the plaintiffs received different models and have different complaints regarding each of those models. In the absence of more specific allegations and/or proof of commonality of any factual or legal claims, plaintiffs have failed to meet their burden of proof on Rule 23(a)(2).

This failure of proof highlights the error of the district judge. Despite evidence in the record presented by the nonmoving party that at least ten different models existed, testimony from a urologist that there is no "common cause" of prostheses malfunction, and conclusory allegations by the party with the burden of proof on certification, we find not even the hint of any serious consideration by the judge of commonality. Moreover, although not dispositive, it is noteworthy that a Judicial Panel on Multidistrict Litigation denied consolidation of all federal AMS penile prostheses case pursuant to 28 U.S.C.

the penile implants knowing that they were defective, certification by this Court will advance the litigation significantly.

**12.** Plaintiffs respond that AMS' own representation to the FDA concerning the "substantial equivalence" of each model to the predicate models clearly establishes commonality. We disagree. Section § 360c(i) of Chapter 21 of the United States Code allows a manufacturer to show that a device is "substantially equivalent" to a device made prior to the enactment of the 1976 Medical Device Amendments by demonstrating that the device "has the same intended use as the predicate device," 21 U.S.C.A. § 360c(i)(1)(A), and that the device "has the same technological characteristics as the predicate device, *or has different technological characteristics* ... and [ ] does not raise different questions of safety and efficacy than the predicate device." § 360c(i)(1)(A)(i & ii) (emphasis added). The term "different technological characteristics" means "that there is a significant change in the materials, design, energy source, or other features of the device from those of the predicate device." § 360c(i)(1)(B). This argument is unpersuasive.

**13.** AMS offered the declaration of John W. Westrum, Jr., a Development Engineering Manager at

AMS, who described the various models manufactured by AMS since 1973. Westrum further detailed how each individual design had evolved over time. Additionally, Carney Carlson, Director of Marketing, Enduorology, at AMS, attested that AMS has manufactured roughly eleven different models of prostheses since 1973.

**14.** Plaintiffs argue defendants "commonly" misrepresented the numerous failures that the implants incurred to the FDA, medical providers, and class members. In support they produced findings by the FDA that in 1988 and 1989, the petitioners had not complied with applicable regulations regarding reporting of device failure, 510(k) applications reflecting that the various devices were "substantially equivalent," marketing material and medical device reports filed with the FDA, and testimony of an AMS engineer which purportedly established that petitioner had a policy of not disseminating information regarding failures to the medical community. True or not, this proof does not demonstrate commonality because it is not specific to a particular model.

**15.** In support of its argument, AMS offered the declaration of Terrence R. Malloy, M.D., who stated that "[t]here is no common complication associated with AMS penile prostheses."

§ 1407,[16] concluding that "the degree of factual commonality among the actions in this litigation [does not] rise[ ] to a level that warrants Section 1407 transfer." *In re Penile Implants Prod. Liab. Litig.*, MDL No. 1020 (J.P.M.L. Sept. 30, 1994). The district judge was made aware of this ruling, and still did not give the question of commonality any discernible degree of scrutiny.

### 3.

Rule 23(a)(3) requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory.

1 *Newberg, supra*, § 3–13, at 3–76 (footnote omitted). *See also General Tel. Co. v. EEOC*, 446 U.S. at 330, 100 S.Ct. at 1706 ("typicality requirement is said to limit the class claims to those fairly encompassed by the named plaintiffs' claims"); *Senter*, 532 F.2d at 525 n. 31 ("[t]o be typical, a representative's claim need not always involve the same facts or law, provided there is a common element of fact or law"). A necessary consequence of the typicality requirement is that the representative's interests will be aligned with those of the represented group, and in pursuing his own claims, the named plaintiff will also advance the interests of the

class members. 1 *Newberg, supra*, § 3.13, at 3–75.

Vorhis' claim relates to a previous AMS penile prosthesis which, several years after insertion, allegedly could not be inflated due to a possible leak in the input tube of a CX device. This in turn may have been caused by rear-tip extender surgery Vorhis had in 1990, in an attempt to increase penile length that was lost through surgery to correct a curvature of his penis. Based on what little we have to go on, it is hard to imagine that Vorhis' claim is typical of the class certified in this case.

Because the district judge issued its amended order of certification before discovery of the plaintiffs other than Vorhis, we have less information about them. However, we know from the amended complaint that each plaintiff used a different model, and each experienced a distinct difficulty. York claims that his 700 inflatable penile prosthesis fails to fully inflate. Kennedy alleges that his Ultrex inflatable penile prosthesis malfunctioned because the cylinders and pump leaked. Finally, Gordy maintains that his Hyrdoflex failed, and that his current implant, the Dynaflex prosthesis, inflates on one side only. These allegations fail to establish a claim typical to each other, let alone a class.

Once again, it should have been obvious to the district judge that it needed to "probe behind the pleadings" before concluding that the typicality requirement was met. *See Falcon*, 457 U.S. at 160, 102 S.Ct. at 2372. Instead, the district judge gave no serious consideration to this factor, but simply mimicked the language of the rule. This was error. *Id.* at 158–59, 102 S.Ct. at 2371 (reversing certification for failure of proof on typicality element, holding that it was error for district court to presume that respondent's claim was typical of other claims against petitioner).

---

**16.** 28 U.S.C. § 1407(a) provides in pertinent part:

(a) When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated pretrial proceedings. Such transfers shall be made by

the judicial panel on multidistrict litigation authorized by this section upon its determination that transfers for such proceedings will be for the convenience of parties and witnesses and will promote the just and efficient conduct of such actions.

### 4.

Rule 23(a)(4) allows certification only if "the representative parties will fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a). This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members. *Hansberry v. Lee*, 311 U.S. 32, 61 S.Ct. 115, 85 L.Ed. 22 (1940); 1 *Newberg, supra*, § 3.21, at 3–125. *See also Smith v. Babcock*, 19 F.3d 257, 264 n. 13 (6th Cir. 1994)("[n]o class should be certified where the interests of the members are antagonistic, because the preclusive effect of the verdict may deprive unnamed class members of their right to be heard").

In *Senter*, we articulated two criteria for determining adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525 (citation omitted); *Cross*, 553 F.2d at 1031 (Rule 23(a)(4) tests "the experience and ability of counsel for the plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent"). *See also Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13 ("adequacy of representation requirement . . . also raises concerns about the competency of class counsel and conflicts of interest"). The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members.

Although the district judge considered the qualifications of plaintiff's counsel, he made no finding on the first *Senter* criterion, and did not consider whether Vorhis or the other plaintiffs would "vigorously prosecute the interests of the class." AMS raised a serious question as to Vorhis' suitability to serve as a class representative given his history of psychological problems. *See, e.g., Roundtree v. Cincinnati Bell, Inc.*, 90 F.R.D. 7, 10 (S.D.Ohio 1979)(plaintiff's history of physical ailments and corresponding neurosis "may affect plaintiff's ability to vigorously participate in the prosecution of a class action"). At the hearing, the judge made no finding regarding plaintiff,[17] but remarked that:

> I don't think he is going to control anything. I don't think a client in a class action ever controls anything. And if you want my feeling on it, he is a name. He's a symbol. I just want to make sure there aren't defenses against that symbol that would then be transmitted against the class.

Hearing Tr. February 24, 1995. This statement is clearly contrary to our holding in *Senter*.

The district judge's February 28 and March 16 orders compound the problem. In the first order the judge again deferred making a finding, referring to plaintiff's "alleged infirmities," and allowing the addition of other class representatives. In the March 16 order the judge not only again failed to make an explicit decision regarding Vorhis, but added three additional class representatives without a record and without any meaningful findings of fact.

As amply illustrated, plaintiffs' complaint and class certification motion simply allege the elements of Rule 23(a) in conclusory terms without submitting any persuasive evidence to show that these factors are met. Because the plaintiffs did not create a factual record, and petitioners have demonstrated that the products at issue are very different and that each plaintiff's claim is unique, class certification was inappropriate.

---

17. Petitioners contend that the lower court affirmatively found that Vorhis was not an adequate representative of the class. As we read the record, the district court never made an explicit finding that Vorhis would or would not make a suitable representative. Initially, the court attempted to get around the issue by having AMS agree that the addition of other class plaintiffs would cure the defect, and issued the February 28 order to that effect. The district court made no mention of Vorhis in the March 16 amended order, but did, however, name Vorhis as a class representative in the notice attached to the class certification order.

**5.**

 The district judge certified the class under Rule 23(b)(3),[18] which requires the court to find "that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed.R.Civ.P. 23(b)(3). Subdivision (b)(3) parallels subdivision (a)(2) in that both require that common questions exist, but subdivision (b)(3) contains the more stringent requirement that common issues "predominate" over individual issues. 1 *Newberg, supra,* § 3.10, at 3–56.

 In *Sterling v. Velsicol Chem. Corp.,* 855 F.2d 1188, 1196–97 (6th Cir.1988), we described the use of Rule 23(b)(3) in connection with mass torts:

> The procedural device of a Rule 23(b)(3) class action was designed not solely as a means for assuring legal assistance in the vindication of small claims but, rather, to achieve the economies of time, effort, and expense. However, the problem of individualization of issues is often cited as a justification for denying class action treatment in mass tort accidents. While some courts have adopted this justification in refusing to certify such accidents as class actions, numerous other courts have recognized the increasingly insistent need for a more efficient method of disposing of a large number of lawsuits arising out of a single disaster or single course of conduct. In mass tort accidents, the factual and legal issues of a defendant's liability do not differ dramatically from one plaintiff to the next. No matter how individualized the issues of damages may be, these issues may be reserved for individual treatment with the question of liability tried as a class action. Consequently, the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible.

. . . .

> In complex, mass, toxic tort accidents, where no one set of operative facts establishes liability, no single proximate cause applies to each potential class member and each defendant, and individual issues outnumber common issues, the district court should properly question the appropriateness of a class action for resolving the controversy. However, where the defendant's liability can be determined on a class-wide basis because the cause of the disaster is a single course of conduct which is identical for each of the plaintiffs, a class action may be the best suited vehicle to resolve such a controversy.

*Id.* at 1196–97 (internal citations and footnotes omitted). *See also* 28 U.S.C.A. Rule 23, Notes of Advisory Committee on Rules, 1966 Amendment ("A 'mass accident' resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages, but of liability and defenses of liability, would be present, affecting the individuals in different ways. In these circumstances an action conducted nominally as a class action would degenerate in practice into multiple lawsuits separately tried.").

Although *Sterling* was a toxic tort case in which the court held that certification was proper, we think the court's remarks are instructive here. Unlike a mass tort action arising out of a single accident or single course of conduct, in medical device products liability litigation of the sort involved here the factual and legal issues often *do* differ dramatically from individual to individual because there is no common cause of injury.

> In products liability actions, however, individual issues may outnumber common issues. No single happening or accident occurs to cause similar types of physical harm or property damage. No one set of operative facts establishes liability. No single proximate cause applies equally to each potential class member and each de-

---

**18.** Plaintiffs also sought certification under Rule 23(b)(1)(A). Because plaintiffs failed to establish the elements of Rule 23(a), we need not consider whether certification under (b)(1)(A) would be proper.

fendant. Furthermore, the alleged tortfeasor's affirmative defenses (such as failure to follow directions, assumption of the risk, contributory negligence, and the statute of limitations) may depend on facts peculiar to each plaintiff's case.

*Dalkon Shield,* 693 F.2d at 853 (citation omitted).

As this case illustrates, the products are different, each plaintiff has a unique complaint, and each receives different information and assurances from his treating physician. Given the absence of evidence that common issues predominate, certification was improper. *See id.,* 693 F.2d at 856 (although common factual questions existed, court should have balanced these concerns with greater number of questions affecting individual class members). In this situation, the economies of scale achieved by class treatment are more than offset by the individualization of numerous issues relevant only to a particular plaintiff. *Id.* ("few issues that might be tried on a class basis in this case, balanced against issues that must be tried individually, indicate that the time saved by a class action may be relatively insignificant").

Thus, even assuming common questions of law or fact, it cannot be said that these issues predominate, and that class treatment would be superior to other methods of litigation. In fact, a number of other courts have denied class certifications in drug or medical product liability actions for these reasons. *See, e.g., Dalkon Shield, supra,* (IUD); *Davenport v. Gerber Prod. Co.,* 125 F.R.D. 116 (E.D.Pa.1989)(baby bottles); *In re Tetracycline Cases,* 107 F.R.D. 719 (W.D.Mo. 1985)(drug); *Payton v. Abbott Labs.,* 100 F.R.D. 336 (D.Mass.1983)(DES); *Mertens v. Abbott Labs.,* 99 F.R.D. 38 (D.N.H. 1983)(DES); *Ryan v. Eli Lilly & Co.,* 84 F.R.D. 230 (D.S.C.1979)(DES).

The superiority aspect of Rule 23(b)(3) also has not been established. A single litigation addressing every complication in every model of prosthesis, including changes in design, manufacturing, and representation over the course of twenty-two years, as well as the unique problems of each plaintiff, would present a nearly insurmountable burden on the district court. By contrast, an individual case of this type is relatively simple to litigate if narrowly focused on a claim regarding a specific model, a specific component, or specific statements made to a particular urologist during a particular period of time. Again, the district judge ignored the JPML finding that consolidated treatment of such claims would not "promote the just and efficient conduct of the entire litigation" and was not necessary because no judicial management crisis exits. *In re Penile Implants Prod. Liab. Litig., supra.*

The district judge also failed to consider how the law of negligence differs from jurisdiction to jurisdiction, a consideration dictated by *Erie R.R. v. Tompkins,* 304 U.S. 64, 78–80, 58 S.Ct. 817, 822–23, 82 L.Ed. 1188 (1938)(federal court sitting in diversity must apply common law of the state in which case would normally be tried rather than a general federal common law). *See In the Matter of Rhone–Poulenc,* 51 F.3d 1293, 1300 (7th Cir.), cert. denied, 116 S.Ct. 184 (1995). "The law of negligence, including subsidiary concepts such as duty of care, foreseeability, and proximate cause, may … differ among the states only in nuance, … [b]ut nuance can be important, and its significance is suggested by a comparison of differing state pattern instructions on negligence and differing judicial formulations of the meaning of negligence and the subordinate concepts." *Id.* The judge certified a nationwide class in this case. If more than a few of the laws of the fifty states differ, the district judge would face an impossible task of instructing a jury on the relevant law, yet another reason why class certification would not be the appropriate course of action. *See, e.g., Dalkon Shield,* 693 F.2d at 850 (commonality requirement not met where fifty jurisdictions in which cases arose did not apply same punitive damage standards).

Plaintiffs failed to meet their burden of demonstrating predominance of common issues. The district judge failed to "question the appropriateness of a class action" of "[a]ll persons residing in the United States, who have had inflatable penile prostheses developed, manufactured and/or sold by … [AMS or Pfizer] implanted in their bodies." The amended order does not identify allegedly common issues, does not explain why they

predominate over individual issues and makes no finding of superiority. Certification was therefore improper.

**6.**

■ Petitioners also claim that the district judge impermissibly shifted the burden of proof to petitioners on the class certification question. The record reflects that the certification hearing proceeded "in the reverse:" the district judge ordered defendants to "show cause why [the court] shouldn't certify a class." As earlier noted, this is in contradiction to unequivocal pronouncements by the Supreme Court and this court that the burden of establishing the elements of a class action rests on the party seeking certification. *See Falcon,* 457 U.S. at 161, 102 S.Ct. at 2372; *Senter,* 532 F.2d at 522.

In his answer, the district judge states that this perception ignores the fact that the district court reviewed ample memoranda and supporting documentation supplied by the parties prior to the hearing, and that the court's direction was no more than an attempt to focus the argument on the most troublesome points. We recognize that, as a practical matter, the course of oral argument often proceeds this way without resulting in an impermissible shifting burden of proof. We might be able to accept this argument if the court's orders contained findings based upon the evidence submitted by the plaintiffs in support of their quest for class certification. However, as just illustrated, the plaintiffs' submissions miss the mark. Moreover, the district judge's "findings" merely parrot the language of Rule 23, and are not findings in any true sense. Thus, we can only conclude that the practical effect of the proceeding below was to place the burden on defendants to disprove plaintiffs' "entitlement" to class certification.

**7.**

■ Defendant Pfizer argues that its due process rights were violated by the district judge's precipitous certification of the ·class. We agree. Pfizer was included as a class defendant only three days after it was served. It had no opportunity to respond to the complaint, let alone conduct any discovery on any of the plaintiffs or to submit a brief to the district court or seek a hearing addressing the class actions issues. Although Rule 23 requires that a class certification "shall" be decided "as soon as practicable" after the commencement of an action, Fed.R.Civ.P. 23(c)(1), "this does not mandate precipitate action. The court should defer decision on certification pending discovery if the existing record is inadequate for resolving the relevant issues." *Chateau de Ville Prods., Inc. v. Tams–Witmark Music Library Inc.,* 586 F.2d 962, 966 (2d Cir.1978) (citations omitted). *Accord, Weathers,* 499 F.2d at 1200 ("[t]he parties should be afforded an opportunity to present evidence on maintainability of class action"); *Shelton v. Pargo, Inc.,* 582 F.2d 1298, 1313 (4th Cir.1978)("discovery is to be encouraged" on the class issue); *Tams–Witmark,* 586 F.2d at 966 ("the district judge acted precipitately in deciding the class certification motion without fuller development of the facts on the issues concerning fairness and adequacy of representation").

In short, plaintiffs not only failed to meet the mandatory elements of Rule 23(a), they also did not demonstrate that class treatment was appropriate under Rule 23(b)(3). The district judge failed in its duty to conduct a "rigorous analysis" into whether these criteria were met, and clearly abused its discretion by basically ignoring the procedural requirements of Rule 23. For all the reasons just discussed, the third *Bendectin* factor is met.

**B.**

■ We now turn to the remaining *Bendectin* factors. Factors one and two direct that the petitioners have no other adequate means to obtain relief and that irreparable harm will occur if the petition is denied. We have held that "class certification is clearly reviewable on direct appeal once a final disposition of the case has been reached." *In re NLO,* 5 F.3d 154, 159 (6th Cir.1993)(refusing to issue writ to vacate district court order certifying class under Rule 23(b)(2) for medical monitoring claims). *See also Coopers & Lybrand v. Livesay,* 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)(not-

withstanding that certification of large class may force defendant to settle despite meritorious defense, courts of appeals have correctly held that orders granting class certification are interlocutory)(dicta).[19] Nonetheless, in *Bendectin* we held that a clearly erroneous certification of a class action gave rise to extraordinary inconveniences warranting issuance of the writ.

In *Bendectin*, the petitioners argued that the district judge had "wrongfully extended his power by forcing them into a 'non-opt out' class" for settlement purposes. This court found irreparable harm not correctable on direct appeal because the appeals court had already rejected an interlocutory appeal of the certifying order. The petitioners would be prejudiced by having to wait to appeal the settlement, because many had already spent considerable resources preparing for trial, and would now be forced to direct their attention to a settlement offer whether they favored it or not. *Id.* at 304. Also, many plaintiffs would have to find new attorneys because of conflicts created by attorneys representing both plaintiffs who wanted to settle, and those who wanted to proceed to trial. Thus an appeal after final judgment was held to be an "inadequate remedy." *Id.*

The *Bendectin* court also found instances of clear error. First, the lower court based its order on the clearly erroneous theory that a class should be certified if there was a possibility that some plaintiffs might prevail against the defendant while others might not. *Id.* at 305. Secondly, and more importantly for our purposes, *Bendectin* held that the district court clearly erred not because it certified the class on a viable theory that a limited fund was available to satisfy the

claims of all the plaintiffs, but because the court failed to make any findings on the record and failed to give the petitioners an opportunity to dispute the issue. We held:

> Irrespective of the proper test, the district court, as a matter of law, must have a fact-finding inquiry on this question and allow the opponents of class certification to present evidence that a limited fund does not exist.[14] ... Because the district judge in this case failed to make any such finding, the certification was clearly erroneous as a matter of law.

> 14. If the district court had made a factual finding on this issue, a writ of mandamus would not be the proper remedy. Factual errors cannot justify the issuance of the writ.

*Bendectin*, 749 F.2d at 306.

Like the petitioners in *Bendectin*, direct appeal by interlocutory review would be unavailable. Like the judge in *Bendectin*, the district judge in this case took improper action by essentially failing to make any genuine findings on any of the elements of Rule 23 when the record before him required such action. Quite simply, the district judge failed to exercise properly his broad discretion *within* the framework of Rule 23. In other words, the district judge in this case did more than merely misapply a rule, he acted outside of that rule and therefore outside of his prescribed jurisdiction.

Although it is difficult to quantify irreparable harm, we believe the district judge's numerous errors in this case display an utter disregard for the judicial process, and suggest such a strong bias in favor of class certification,[20] that petitioners' rights to fair

19. Petitioners cite a recent Seventh Circuit opinion, *In the Matter of Rhone–Poulenc*, 51 F.3d 1293 (7th Cir.), *cert. denied*, —— U.S. ——, 116 S.Ct. 184, 133 L.Ed.2d 122 (1995), in which the court granted a petition for writ of mandamus vacating an order certifying a nationwide class action brought on behalf of hemophiliacs inflected with AIDS as a result of blood solids manufactured by the defendants. The Seventh Circuit held that mandamus was appropriate because "an appeal will come too late to provide effective relief for these defendants" because of "the sheer magnitude of the risk to which the class action, in contrast to the individual actions pending or likely, exposes them." *Id.* at 1297. Although we

are not unsympathetic to this reasoning, we do not rely on it as a basis of our ruling here.

20. The district judge made several opening remarks at the commencement of the certification hearing. He indicated that class actions were not "my favorite type of litigation," because they forced the judge to make decisions involving a great number of people, and put the judge in a "semi-partisan position" when determining whether a proposed settlement is appropriate. Hearing Tr. at 3–4. The court continued:

> Now, those are my personal dislikes. And I will agree with you, my personal views are totally irrelevant, because on the other side of

process throughout the course of the litigation in the trial court can only be protected by issuance of the writ.[21]

District judges do not always issue correct rulings; however, they are expected to act within the confines of the federal rules. As a result of the lower court's failure to follow Rule 23, petitioners in the case did not receive any of the procedural protections established by those rules. Moreover, here there are strong indications that that usurpative judicial conduct would continue if left unchecked. Although damage and error of a different type, we think the magnitude is equivalent to that which prompted this court in *Bendectin* to grant mandamus relief.

■■■ A separate cause for concern is the judge's certification of a nationwide class, despite the fact that there were previously-filed cases at more advanced stages of litigation.[22] Although there is no precise rule that, as between federal district courts, one court should defer to the other, "the general principle is to avoid duplicative litigation." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976); *Kerotest Mfg. Co. v. C–O–Two Fire Equipment Co.*, 342 U.S. 180, 72 S.Ct. 219, 96 L.Ed. 200 (1952); *New York State Conf. Pension & Retirement Fund v. Hoh*, 554 F.Supp. 519, 529 (N.D.N.Y.1982). *See generally* Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 17A *Federal Practice and Procedure* § 4247 n. 7 (2d ed. 1988) (and cases cited therein). The orders in this case threaten to throw preexisting cases into disarray. The waste of judicial resources due to duplicative proceedings is plain and is not correctable on appeal. Additionally, it would have been

wise to consider AMS' motion to dismiss or transfer venue, because either ground could potentially obviate the need to expend judicial time deciding the class certification question.

## C.

■■■ The fourth and fifth *Bendectin* guidelines examine whether the district judge's order is an oft-repeated error or manifests a persistent disregard of the federal rules (the fourth *Bendectin* factor), or "raises new and important problems, or issues of law of first impression." These factors are somewhat contradictory, and the district judge's order typically will not satisfy both guidelines. Notwithstanding, under *Bendectin's* balancing test, proof of either four or five, in combination of proof that the other guidelines are satisfied, is generally sufficient for issuance of the writ. *In re Parker*, 49 F.3d 204, 211 (6th Cir.1995)(absence of proof on fourth *Bendectin* guideline did not mean that issuance of writ was inappropriate because all other guidelines overwhelmingly supported issuance of writ and Supreme Court has approved use of writ to review unusual and important procedural questions); *Bendectin*, 749 F.2d at 306 ("where all of the other guidelines overwhelmingly support the propriety of the writ, we do not believe that the absence of [the fourth *Bendectin*] factor is controlling").

Clearly, for the reasons discussed at length above, the February 28 and March 16 orders represent a "disregard of the federal rules." Further, two prior opinions by the same district judge certifying a class of recipients of silicone gel breast implants are carbon-

---

the coin there is the fact that neither this individual, nor any individual, could afford to take on the American Medical System. You'd beat him to death. You have more money, more manpower, more time and everything, and I've seen it done with distressing frequency. I have seen plaintiffs beaten down because they couldn't compete, and I am aware that the only way that plaintiffs can compete is by a class action.
*Id.* at 4.

**21.** In his answer, the district judge pointed out that his orders certifying the class were conditional, and could be decertified at any time.

Notwithstanding, "[c]onditional certification is not a means whereby the District Court can avoid deciding whether, at that time, the requirements of the Rule have been substantially met." *In re Hotel Tel. Charges*, 500 F.2d 86, 90 (9th Cir.1974). Moreover, given the district judge's cavalier approach to the certification question, it is doubtful that serious consideration of the issue would occur at a later point in the proceeding.

**22.** We are also troubled by the appearance of the same counsel in the several pending class actions, which raises an obvious concern that counsel may be forum-shopping.

copies to the March 16 amended order of certification in this case. *See Dante v. Dow Corning Corp.*, 143 F.R.D. 136 (S.D.Ohio 1992);[23] *Wilson v. Siemens Pacesetter, Inc.*, No. C–1–93–0188 (S.D.Ohio Sept. 10, 1993).

■ In a larger context, despite a national trend to deny class certification in drug or medical product liability/personal injury cases,[24] this case marks the fourth medical product liability class certified in the Southern District of Ohio in the past three years, three by the district judge in this proceeding. *See Dante, supra; Siemens Pacesetter, supra; In re Cordis Corp. Pacemaker Prod. Liab. Litig.*, MDL No. 850 (S.D.Ohio Dec. 23, 1992)(Rice, J.). Because the abuse of discretion in this case is so clear, and the district judge in this case has a history of such conduct, we think it appropriate for this court to exercise its mandamus powers "[t]o avoid repeated errors of this magnitude in applying the Federal Rules of Civil Procedure." *McDonnell Douglas Corp. v. United States Dist. Court*, 523 F.2d 1083, 1087 (9th Cir.1975)(mandamus issued to decertify class erroneously certified under Rule 23(b)(1)(A & B) & (b)(2), in contravention of prior Ninth Circuit opinion and where district court had reached an identical decision in a prior case). That is not to say that a class action in such a context will never be appropriate,[25] but it is to say that strict adherence to Rule 23 in products liability cases involving drug or medical products which require FDA approval is *especially* important. *See In re Temple*, 851 F.2d 1269, 1273 n. 7 (11th Cir.1988)(declining to hold that products liability or mass accident suit could never be proper subject of class action but recognizing "that the prerequisites of commonality and typicality will normally be hard to satisfy").

### D.

■ As we observed in *In re Parker*, "[d]ecisions that meet part four are particularly prone to mandamus review." 49 F.3d at 211. Thus we are less concerned that the order in this case raise "issues of first impression," or "new and important problems." However, as petitioners point out, this court has never considered directly the application of Rule 23 in a drug or medical device product liability/personal injury case. Because the stakes are so high in class actions, *see Livesay*, 437 U.S. at 470, 476, 98 S.Ct. at 2458, 2462 (recognizing that refusal to certify class may induce plaintiff to abandon his individual claim; similarly, grant may so increase defendant's potential damages liability and litigation costs that he might decide to settle despite valid defense); *Rhone–Poulenc*

---

**23.** This court rejected a petition for writ of mandamus from the district court's class certification order in *Dante. See In re Breast Implant Litig.*, Nos. 92–3420/3462, 1992 U.S.App. LEXIS 16257 (6th Cir.1992)(unpublished).

**24.** *See, e.g., In re Northern Dist. of Cal., Dalkon Shield IUD Prods. Liab. Litig.*, 693 F.2d 847 (9th Cir.1982), *cert. denied*, 459 U.S. 1171, 103 S.Ct. 817, 74 L.Ed.2d 1015 (1983)(IUD); *Martin v. American Medical Sys. & Pfizer Inc.*, No. IP 94–2067–C H/G (S.D.Ind. Oct. 26, 1995); *Miles v. American Medical Sys., Inc. & Pfizer Inc.*, No. C94 1808 CAL (N.D.Cal. March 3, 1995); *In re Orthopedic Bone Screw Prod. Liab. Litig.*, MDL No. 1014 (E.D.Pa. Feb. 22, 1995)(pedicle screws); *Mehornay v. Pfizer Inc.*, No. CV–91–101–HLH, 1991 WL 540731, 1991 U.S.Dist. LEXIS 16560 (C.D.Cal. June 3, 1991)(implanted heart valve prostheses); *Davenport v. Gerber Prod. Co.*, 125 F.R.D. 116 (E.D.Pa.1989)(baby bottles); *Raye v. Medtronic Corp.*, 696 F.Supp. 1273 (D.Minn.1988)(pacemakers); *Rall v. Medtronic, Inc.*, No. CV–S–84–741–LDG, 1986 WL 22271 (D.Nev. Oct.15, 1986)(pacemakers); *In re Tetracycline Cases*, 107 F.R.D. 719 (W.D.Mo. 1985)(drug); *Linkous v. Medtronic, Inc.*, No. 84–1909, 1985 WL 2602 (E.D.Pa. Sept.4, 1985); *In*

*re Zomax Drug Litig.*, No. 83–106 (E.D.Ky. June 11, 1984); *Payton v. Abbott Labs*, 100 F.R.D. 336 (D.Mass.1983)(DES; decertifying class); *McElhaney v. Eli Lilly & Co.*, 93 F.R.D. 875 (D.S.D. 1982)(DES); *Thompson v. Procter & Gamble Co.*, No. C–80–3711 EFL, 1982 WL 114 (N.D.Cal. Dec.8, 1982)(tampons); *Ryan v. Eli Lilly & Co.*, 84 F.R.D. 230 (D.S.C.1979)(DES); *Mink v. University of Chicago*, 27 Fed.R.Serv.2d 739 (N.D.Ill. 1979)(DES); *Rose v. Medtronics, Inc.*, 107 Cal. App.3d 150, 166 Cal.Rptr. 16 (1980)(pacemaker); *Rosenfeld v. A.H. Robins Co.*, 63 A.D.2d 11, 407 N.Y.S.2d 196 (1978), *appeal dismissed*, 46 N.Y.2d 731, 413 N.Y.S.2d 374, 385 N.E.2d 1301 (1978)(IUD).

**25.** *See, e.g., In re Copley Pharmaceutical, Inc.*, 158 F.R.D. 485 (D.Wyo.1994), the court certified a class of all persons who suffered damages as a result of using Albuterol, a bronchodilator manufactured by Copley Pharmaceutical. The court was careful to point out that the action involved only "one product," *id.* at 489, and that "the common questions" were "more straight forward than those in many product liability cases." *Id.*

51 F.3d 1293 (sheer magnitude of risk to which class action exposes defendants creates irreparable harm), we remind district judges that both Supreme Court and Sixth Circuit precedent require close adherence to the strictures of Rule 23.

In sum, although class certification orders are, in the vast majority of circumstances, not subject to mandamus review, we find that the district judge's total disregard of the requirements of Rule 23 in this case, and his similar rulings in other medical products liability actions, warrant issuance of the writ of mandamus on these extreme and limited facts. In other words, on balance, the *Bendectin* factors point in favor of the writ. Given this resolution, we need not address petitioners' remaining arguments.

## IV.

Under the various formulations of the writ, we conclude that petitioners have met their heavy burden. For all the foregoing reasons, the petitions for writ of mandamus are GRANTED, and the district judge is directed to decertify the plaintiff class.