Anthony ALLEN, Plaintiff,

v.

Simon L. LEIS, Jr., et al., Defendants.

No. C–1–00–261.

United States District Court,
S.D. Ohio,
Western Division.

Nov. 20, 2001.

See, also, 154 F.Supp.2d 1240,

Stephen R Felson, Robert Brand Newman, Newman & Meeks Co LPA, Cincinnati, OH, for Anthony Allen.

Elise W Porter, Darrell M Pierre, Jr, Ohio Attorney General—2, Chief Counsel's Staff Section, Columbus, OH, for Betty D Montgomery.

Shannon M Reynolds, Assistant, Prosecutor, Hamilton County Prosecutor's Office, Civil Division, C Joseph McCullough, Hamilton County Prosecutor, Civil Unit, Cincinnati, OH, for Simon L Leis, Jr, Bob Bedinghaus, Tom Neyer, and John Dowlin.

## ORDER

SPIEGEL, Senior District Judge.

This matter is before the Court on Plaintiff's Renewed Motion to Certify the Class (doc. 7) and Defendants' Response (doc. 15).

On April 5, 2000, Plaintiff Anthony Allen filed a civil single-count Complaint in federal court against Defendants Hamilton County Sheriff Simon Leis, Jr. and the Hamilton County Board of Commissioners (doc. 1). On June 1, 2000, Defendants filed their Answer (doc. 3). On February 28, 2001, Plaintiff filed a Motion for Class Certification, pursuant to Federal Rule of Civil Procedure 23(b)(2) and Local Rule 23.3 (doc. 7). Shortly thereafter, Plaintiff filed a Motion for a Preliminary Injunction, pursuant to 42 U.S.C. § 1983 (doc. 8). On April 27, 2001, Defendants filed their Response to both of Plaintiff's Motions (doc. 15). In addition, Defendants filed a Motion for Summary Judgment (doc. 18). Plaintiff filed a Reply to his Motion for a Preliminary Injunction, as well as a Response to Defendants' Motion for Summary Judgment on May 7, 2001 (doc. 19). On August 9, 2001, Plaintiff filed a Renewed Motion for Class Certification (doc. 27). On August 24, 2001, Defendants filed a Memorandum in Opposition to Plaintiff's Renewed Motion for Class Certification (doc. 29). On September 19, 2001, the Court held a hearing on these two Motions. In response to the issues discussed at that hearing, Plaintiff filed a Post–Hearing Memorandum Regarding Class Definition on September 24, 2001 (doc. 37). On October 16, 2001, Defendants filed a Memorandum in Response to Plaintiff's Post–Hearing Memorandum Regarding Class Definition (doc. 40).

## BACKGROUND

On April 5, 2000, Plaintiff filed this Title 42 U.S.C. § 1983 action against Defendants. Plaintiff alleges that Defendants violated his constitutional right secured by the Fifth Amendment to the United States Constitution, as applied to the States by the Fourteenth Amendment, against the taking of personal property without due process of law. Plaintiff alleges this violation is the result of a policy, adopted pursuant to Ohio Revised Code § 341.06, which permits county sheriffs to seek reimbursement from prisoners related to the administrative costs of their confinement (*Id.*).

The following facts are generally undisputed by the Parties and are derived from Plaintiff's Complaint (doc. 1), Defendants' Motion for Summary Judgment (doc. 18), Plaintiff's Response (doc. 19) and the Court's Order of June 14, 2001 (doc. 23).

In 1996, the Ohio Legislature enacted Revised Code 341.06, titled "Prisoner reimbursement policy; fees for medical treatment or services," which, in general, allows Ohio political subdivisions to seek reimbursement from prisoners for administrative costs and services (doc. 23).

On December 3, 1998, the Board of Hamilton County Commissioners and the Hamilton County Sheriff entered into an agreement and adopted a Prisoner Reimbursement Policy (also referred to as a Pay–For–Stay Program) as set forth in Ohio Revised Code § 341.06 (doc. 18). The Prisoner Reimbursement Policy requires any person confined in the Hamilton County Justice Center (hereinafter, "HCJC") to reimburse Hamilton County for expenses incurred by reason of that person's confinement. The expenses include a thirty-dollar ($30.00) book-in-fee in order to allegedly help defray a portion of the booking cost. The book-in-fee is the focus of Plaintiff's Complaint.

The Hamilton County Prisoner Reimbursement Policy was implemented soon after the Board of Commissioners and the Sheriff agreed to its adoption (doc. 18). Upon arrival at the HCJC, the prisoner is immediately taken to a booking window for initial processing. A processing clerk receives paperwork from the arresting officer and corrections officer related to the prisoner and sets a preliminary bond. The processing clerk then gives the corrections officer a Release of Funds waiver. At that point, the corrections officer explains the Prisoner Reimbursement Policy and asks the prisoner to read the waiver. If the prisoner is illiterate, the corrections officer reads the Waiver to the prisoner. The corrections officer explains that a state law allows the Sheriff to require prisoners to reimburse the county for expenses associated with the costs of confinement. The prisoner is also informed that he or she can apply for a full refund of the book-in-fee if the criminal charges are dismissed or if the prisoner is acquitted of the charges. To apply for a refund, a prisoner is advised

to bring proper documentation to the property window at the jail. A prisoner can also receive a refund by calling the Sheriff's Office during normal business hours using the telephone number listed on the Release of Funds Waiver. Defendants allege that a corrections officer then attempts to answer any questions that a prisoner might have regarding the Reimbursement Policy and asks the prisoner to sign the Release of Funds Waiver. A copy of the Release of Funds waiver is then provided to the prisoner at intake, and reads as follows:

> I _____, have read and acknowledge that certain monies are owed for the pay-for-stay program. I authorize and grant my permission that a $30.00 booking fee and/or per diem amount be removed from my commissary/property account, cash on hand, check or my personal credit card.
>
> I further authorize and grant permission to the Hamilton County Sheriff to deduct the amount due from my commissary/property account for purpose of paying for the costs outlined herein including any previous costs incurred during prior incarcerations ...
>
> If the charges for which you were booked are dismissed or you are found not guilty of the charges, then you may be reimbursed for your book-in-fee by bringing proper documentation to the Hamilton County Sheriff's Corrections Property window ... 1000 Sycamore Street ... Hours of operation are Monday though Friday, 8:00 a.m. to 3:00 p.m.

(doc. 8). The monies collected from the book-in-fees are set aside in a separate account to the credit of the Hamilton County Sheriff's Office (*Id.*).

Next, the prisoner's personal property is placed on the processing counter and inventoried. The processing clerk logs the property as it comes across the counter and places it in a plastic bag. A receipt is generated and explained to the prisoner. The prisoner is requested to confirm the accuracy of the receipt and sign it as well. The prisoner's cash-on-hand is separately inventoried on a "money form" receipt. The money form reflects the amount of cash inventoried, mi-

nus the book-in-fee, and is given to the prisoner to confirm its accuracy. Once again, the prisoner is asked to sign the form. The receipts are placed in the prisoner's personal property bag. The prisoner's cash that is applied to the book-in-fee is kept in a separate envelope from the prisoner's remaining cash. The remaining cash is deposited with the county treasurer and applied to the prisoner's inmate account. The book-in-fee is deposited with the county treasurer and applied as reimbursement for the cost of the prisoner's confinement.

At the conclusion of the prisoner's confinement in the jail, all personal property is returned to the prisoner with their corresponding receipts. As stated herein above, if the criminal charges are dismissed or the prisoner is acquitted of the charges, then he or she may apply for a refund of their book-in-fee. The refund can be requested in-person or by telephone. A great majority of refunds are requested by telephone. The disposition of the criminal case is checked by jail employees and if it meets the required criteria (dismissal or acquittal), a refund check is issued from the county.

In 1999, the Sheriff's Office collected a total of pay-for-stay funds in the amount of $468,335.76 (doc. 8). The majority of this consisted of the above-described book-in-fees (*Id.*). The fund was contributed to by 50,134 inmates for an average of $9.35. There were 3,589 inmates who refused to sign the Release of Funds (*Id.*). There were 452 refunds in 1999, 58 of which were less than $1.00 (*Id.*). The dollar amount of the refunds for 1999 appears to be $10,348.82, along with $1,903.95 that was eligible for a refund but for some reason was not refunded—for example, where the inmate's address was no longer valid (*Id.*). More than $2,300 was collected from detainees through June 6, 2000 because book-in-fees were not fully paid on prior arrests and incarcerations (*Id.*).

The agreement between Hamilton County and the Sheriff's Office indicates that the taking of funds of detainees is not purely at the option of the detainee. The agreement states, in pertinent part:

> A person confined to the County Jail shall be required to reimburse the County for

any expenses incurred by reason of the person's confinement in the County Jail, which expenses may include but are not limited to the following: (a) a minimum book-in-fee of $30.00.

(doc. 8). The charges are said to be subject to a sliding scale.

On July 18, 1999, Plaintiff Anthony Allen was arrested by a Cincinnati police officer, on an outstanding felony forgery warrant and transported to the Hamilton County Justice Center (docs.1, 19). Prior to that, Plaintiff had never been arrested. Plaintiff was taken to the intake area where he was processed. Plaintiff's personal property, including $100.00 in cash, was inventoried by a processing clerk and corrections officer. The processing clerk separated $30.00 pursuant to the Prisoner Reimbursement Program. Plaintiff does acknowledge that he signed the Release of Funds waiver and further identified his signature on the Waiver. Plaintiff also admits that, at the time of processing, he did not object to the book-in-fee to any of the deputies, either verbally or in writing, at any time during his confinement in the jail. Apparently, the first time Plaintiff voiced a complaint regarding the $30.00 book-in-fee was immediately after he was released from the HCJC and was outside the building with his family.

The day after Plaintiff was released from the HCJC, he was advised by a Cincinnati police officer that the criminal charges filed against him would be dismissed. Apparently, while the police computer contained an entry with Plaintiff's name and social security number, Plaintiff in fact had no outstanding arrest warrant and was released after arraignment. At no time after the charges were dismissed did Plaintiff request or apply for a refund of the book-in-fee. It is undisputed by either Party that as of the day of the May 10, 2001 Hearing, Plaintiff had not sought a refund of his book-in-fee, which according to Defendants, he is still eligible to do.

## CLASS CERTIFICATION

The issue before the Court today is whether class certification is appropriate and if so, how the class should be defined.

As a threshold matter, the Court finds it necessary to address certain arguments in Defendants' Memorandum in Opposition to Class Certification (doc. 29). Defendants argue that the exact nature of a potential class cannot be determined before the question of constitutionality is settled and conclude that the Court should not certify a class until the constitutionality of Ohio Revised Code 341 .06 (hereinafter "R.C. 341.06") and the Hamilton County Prisoner Reimbursement Program is decided (*Id.*).

The Ohio Attorney General (hereinafter "OAG"), as an intervenor, filed a response contesting this assertion (doc. 32). The OAG contends that Defendants' argument implies that the facial constitutionality of R.C. 341.06 is at issue here (*Id.*). The OAG further asserts that Plaintiff has only challenged R.C. 341.06 as applied pursuant to the Hamilton County policy and has not made a facial challenge to R.C. 341.06 itself (*Id.*). Finally, the OAG objects to the prospect of the Court deciding on the facial constitutionality of R.C. 341.06 where Plaintiff has not requested such a determination (*Id.*).

The Court agrees with the OAG that no determination of the facial constitutionality of R.C. 341.06 is necessary before certifying the class requested by Plaintiff (*Id.*). Plaintiff's requested class definition, "all those who were arrested and whose funds were confiscated before conviction," has framed a putative class that precludes the necessity for a facial determination. The Court therefore concludes that it can decide on the appropriateness of class certification at this time.

The district court has broad discretion in deciding whether to certify a class. *In re American Medical Sys., Inc.,* 75 F.3d 1069, 1079 (6th Cir.1996). A class action may only be certified if the court is satisfied after a "rigorous analysis" that the prerequisites of Rule 23(a) have been met. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 161, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Maintainability as a class action may be determined by the pleadings, although ordinarily the court must probe behind the pleadings to ensure that the prerequisites of Rule 23 have been met. *General Tel. Co.,* 457 U.S. at 160, 102 S.Ct. 2364; *In re AMS,* 75 F.3d at 1079.

The party seeking to utilize the class action device bears the burden of proof. *In re AMS*, 75 F.3d at 1079; *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976). In order for a class to be certified, all four prerequisites of Rule 23(a) must be met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245, 138 L.Ed.2d 689 (1997); *In re AMS*, 75 F.3d at 1079. Once those prerequisites are met, then the party seeking certification must demonstrate that the action qualifies under at least one of the subcategories of Rule 23(b). *Id.*

## I. Requirements of Federal Rule of Civil Procedure 23(a)

In order to proceed as a class action, the party seeking certification must demonstrate that

(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a). As no class action may be maintained without meeting these prerequisites, an analysis of these factors is appropriate.

### A. Rule 23(a)(1): Numerosity

■ The first requirement of Rule 23(a) is that the class be so numerous that joinder of all members would be impracticable. Fed.R.Civ.P. 23(a)(1); *In re AMS*, 75 F.3d at 1079. The plaintiff need not demonstrate that it would be impossible to join all the class members; rather, he need simply show that joinder in this case would be difficult and inconvenient. *Day v. NLO, Inc.*, 144 F.R.D. 330, 333 (S.D.Ohio 1992); *see also Boggs v. Divested Atomic Corp.*, 141 F.R.D. 58, 63 (S.D.Ohio 1991) (stating "[s]atisfaction of the numerosity requirement does not require that joinder is impossible, but only that plaintiff will suffer a strong litigational hardship or inconvenience if joinder is required."). There is no strict numerical test used to determine whether joinder is impracticable. *In re AMS*, 75 F.3d at 1079; *Senter*, 532

F.2d at 523. Instead, the court must examine the specific facts of each case. *In re AMS*, 75 F.3d at 1079 (quoting *General Tel. Co. of Northwest, Inc. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980)). In determining numerosity, the court "may consider reasonable inferences drawn from facts before him at the stage of the proceedings." *Senter*, 532 F.2d at 523.

■ Plaintiff asserts that Defendants have produced documents demonstrating that there are over 50,000 pre-trial detainees per year who enter the Hamilton County Justice Center and have funds confiscated for the book-in-fees (doc. 27). Plaintiff concludes that such numbers clearly exceed the range where joinder of all members would be practical (*Id.*). Defendants make no argument concerning this issue.

Given the "rule of thumb" that forty plaintiffs is enough to make joinder impracticable, (See *Richter v. Bowen*, 669 F.Supp. 275, 281 n. 4 (N.D.Iowa 1987)), the Court finds it self-evident that Plaintiff meets this standard and therefore, the Rule 23(a)(1) requirement is satisfied.

### B. Rule 23(a)(2): Commonality

■ In order to satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). The commonality requirement is satisfied "as long as the members of the class have allegedly been affected by a *general* policy of the defendant and the general policy is the focus of the litigation." *Day*, 144 F.R.D. at 333 (quoting *Sweet v. General Tire & Rubber Co.*, 74 F.R.D. 333, 335 (N.D.Ohio 1976)) (emphasis in original). The commonality test is qualitative, not quantitative. *In re AMS*, 75 F.3d at 1080 (citing 1 Herbert B. Newberg and Alba Conte, *Newberg on Class Actions*, § 3.10 at 3–50 (3d ed.1992)). There need be only a single question of law or fact common to all members of the class. *Id.* "[T]he mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible." *Sterling v. Velsicol Chemical Corp.*, 855 F.2d 1188, 1197 (6th Cir.1988).

Plaintiff argues that his sole cause of action, alleging a violation of 42 U.S.C. § 1983, relates to a common course of conduct because the policies and practices of Hamilton County in imposing a monetary fine affects every pretrial detainee in precisely the same way (doc. 27). Defendants offer no argument in regard to this requirement.

The Court agrees with Plaintiff that, given the fact that every pretrial detainee is subject to deprivation of the book-in-fee upon arrival, there is at least one common question of law and fact at issue. The Court therefore finds Plaintiff's argument to be persuasive and concludes that the requirement of commonality has been met.

### C. Rule 23(a)(3): Typicality

■ Rule 23(a)(3) also requires that "claims or defenses of the representative parties [be] typical of the claims or defenses of the class." Fed.R.Civ.P. 23(a)(3). A representative's claim need not always involve the same facts or law to be typical, provided there is a common element of fact or law. *Senter*, 532 F.2d at 525 n. 31. The typicality requirement ensures that the representative's interests will be aligned with those of the represented group and that the named plaintiff will also advance the interests of the class members. *In re AMS*, 75 F.3d at 1082 (citing 1 Newberg, *supra*, § 3.13, at 3–75). "[A] plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.* (citing 1 Newberg, *supra*, § 3.13, at 3–76).

Plaintiff argues that this requirement is relatively easily met so long as other class members have claims similar to the named Plaintiff. Plaintiff asserts that his legal claims are precisely the same as those of the class he seeks to represent; all were similarly incarcerated and all were deprived of their money in precisely the same manner by the County's policies (doc. 27). Plaintiff concludes from this that the typicality requirement has been met (*Id.*). Again, Defendants make no argument as to whether the typicality requirement has been met.

The Court concludes that, given the easily met nature of this requirement, Plaintiff has demonstrated his claims are sufficiently typical to satisfy this requirement.

### D. Rule 23(a)(4): Adequacy

Finally, Rule 23(a)(4) requires that the representative parties fairly and adequately protect the interests of the class. Fed. R.Civ.P. 23(a)(4). There are two criteria for determining the adequacy of representation: "1) the representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *Senter*, 532 F.2d at 525; *Cross v. Nat'l Trust Life Ins. Co.*, 553 F.2d 1026, 1031 (6th Cir. 1977) (stating Rule 23(a)(4) tests "the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent."). This adequacy requirement overlaps with the typicality requirement. *In re AMS*, 75 F.3d at 1083.

Plaintiff first asserts that there are no conflicts or antagonisms between the moving Plaintiff and class members (doc. 27). Plaintiff further asserts that both he and members of the class were all victimized by Defendants' misconduct and all have the mutual incentive to establish the alleged constitutional failure of Defendants' policies. Plaintiff also asserts that proof of Defendants' alleged course of misconduct would substantially advance the claim of every class member (*Id.*).

In regard to the second criteria, Plaintiff asserts that his legal counsel are experienced class action attorneys and they have demonstrated their ability to organize and prosecute complex litigation through creative and effective case management techniques (*Id.*).

Plaintiff concludes from this that he has met both of these requirements and therefore he is at least adequate to represent the class (*Id.*).

Defendants argue that Plaintiff does not adequately represent the class. Defendants base this argument on an assertion that

Plaintiff's counsel completely abandoned all of the available claims for relief throughout the course of this litigation (doc. 29). Defendants, in their Motion, hesitate to further argue this point and defer to the Court's determination of this issue (*Id.*)

For the reasons outlined below in the analysis of the nature of Plaintiff's claims for relief, the Court does not conclude that Plaintiff's counsel has abandoned all possible claims for relief and is confident that Plaintiff's counsel will competently and vigorously prosecute the interests of all of the class members. The Court further concludes that the named plaintiff has interests in common with the unnamed members of the class. Therefore, the Court finds that the requirement of adequacy has been met.

In sum, the Court concludes that Plaintiff has met all the requirements set forth in Rule 23(a) of the Federal Rules of Civil Procedure. Therefore, the Court must now determine which kind of certification should be applied to the class at hand.

## CLASS DEFINITION

Plaintiff requests that the class be defined as "all persons whose funds were confiscated before conviction under the Hamilton County Pay–to–Stay Program."

At the hearing held by the Court regarding class certification, it expressed the view that the class definition provided by Plaintiff might be too broad and that it could be narrowed by eliminating from the class those members who signed a "Release of Funds Waiver" as Plaintiff did. The Court further noted that this may require a new class representative and thus stated orally that counsel for the current representative would have two weeks to find a plaintiff who had not signed a waiver.

In his Post–Hearing Memorandum, Plaintiff declined the Court's suggestion to find a plaintiff who had not signed a waiver and thus secure another class representative (doc. 37). Plaintiff's counsel cited its ethical duty to not abandon the claims of those detainees who signed a waiver form and suffered a seizure of funds without due process as the reason for its declining to follow the Court's suggestion (*Id.*). The Court will

therefore proceed with an analysis of the class definition provided by Plaintiff.

## RULE 23(b)(2) CERTIFICATION

Plaintiff brings this action pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure (doc. 27). To qualify for certification as a "Rule 23(b)(2)" class, the class must demonstrate that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

█ Plaintiff asserts that he seeks only equitable relief on behalf of the class which is that Defendants cease confiscating funds from pre-trial detainees and make restitution of all funds illegally taken (doc. 27). Plaintiff further asserts that Defendants' policies affect Plaintiff and all class members in an identical manner, and Plaintiff seeks a common remedy to benefit all members of the class (*Id.*). Plaintiff concludes from this that the putative class satisfies the requirements of Rule 23(b)(2) of the Federal Rules of Civil Procedure.

Defendants argue that Plaintiff, in stating that he no longer needs and does not request an injunction or declaratory relief, abandoned any claim that would make Rule 23(b)(2) certification appropriate.

Courts are split on the question of whether restitution is injunctive and/or equitable relief. The court *In Re School Asbestos Litigation* 789 F.2d 996, (3rd Cir.1986) held that school authorities' claim seeking mandatory injunctive relief in the form of restitution for expenditures already incurred to ameliorate asbestos hazards was an action for money damages and could not be maintained as class action. Likewise, in *Powers v. Government Employees Insurance Co.,* 192 F.R.D. 313 (S.D.Fla.1998), the court concluded that class action certification was not appropriate under rule permitting certification for purposes of injunctive relief, where declaratory judgment sought by Plaintiff served the ultimate goal of monetary restitution and was designed primarily to facilitate and ensure the satisfaction of monetary relief.

Contrary to the above cases are *Ballard v. Equifax Check Services Inc.*, 186 F.R.D. 589 (E.D.Cal.1999) and *Coleman v. Pension Benefit Guaranty Corp.*, 196 F.R.D. 193 (D.D.C. 2000) which held that 23(b)(2) certification may be appropriate in cases where monetary damages are sought provided such request is secondary to a request for injunctive and declaratory relief.

Numerous other cases, while not deciding a matter on the question of whether or not restitution is equitable relief, indicate in dicta that restitution is equitable. For instance, the Supreme Court stated in *Mertens v. Hewitt Associates*, 508 U.S. 248, 255, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993) that the petitioners were attempting to characterize the relief sought as equitable even though they did not "seek a remedy traditionally viewed as equitable,' such as injunction or restitution." In addition, the Sixth Circuit opinion, *Golden v. Kelsey–Hayes Company*, 73 F.3d 648, 661 (1996), while acknowledging that a monetary award generally is a form of legal relief, concluded that this is not always true. In coming to that conclusion, the Sixth Circuit cited numerous authorities, the most important of which allowed a court in equity to award monetary restitution as an adjunct to injunctive relief. *See Tull v. United States*, 481 U.S. 412, 424, 107 S.Ct. 1831, 95 L.Ed.2d 365 (1987). The Sixth Circuit likewise clearly indicated in *Equal Employment Opportunity Commission v. Detroit Edison Company*, 515 F.2d 301, 308 (1975) (overruled on other grounds) that "restitution is an equitable remedy..."

Of particular interest to the Court is *Broussard v. Foti*, No. 00–2318, 2001 WL 699525 (E.D.La.2001). Here, Plaintiffs were a class of prisoners that were required by the Sheriff to pay a small surcharge to defray the cost of processing bonds. Plaintiffs were requesting injunctive relief, restitution of the surcharge, judicial interest, attorney's fees and costs. The court here found that the relief sought by Plaintiffs was primarily equitable and certified the class pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure.

Plaintiff's arguments are persuasive. The Court concludes that Defendants, in its policy to separate up to $30 in currency from every pretrial detainee processed at the justice center acted in manner generally applicable to the class as defined by Plaintiff in his Motion. Further, the Court finds that injunctive relief as applied to the class as a whole is appropriate under these circumstances.

As asserted by Defendants, the Court recognizes that, at the time of its June 14, 2001 Order, Plaintiff was no longer seeking a preliminary injunction and, consequently, the Court dismissed Plaintiff's Motion for Preliminary Injunction without prejudice (doc 23). However, nothing in the record indicates that Plaintiff has abandoned his claim for any kind of injunction. While Plaintiff does not use the talismanic words "injunction", he clearly asks in his subsequent pleadings that Defendants cease the collection of book-in fees prior to conviction in addition to the requested restitution of the book-in-fee for himself and the other members of the putative class. This request indicates to the Court that Plaintiff is seeking the issuance of an order "restraining [Defendants] in the continuance" of their collection of the book-in-fee (doc. 27). Such a request clearly fits the dictionary definition of injunction. *Blacks Law Dictionary* 705 (5th ed.1979).

Given this apparent pursuit of an injunction, the Court finds the *Broussard* decision is particularly instructive as it is so similar to the facts of the instant case. The decision of the *Broussard* Court to certify a class pursuant Rule 23(b)(2), coupled with numerous Supreme Court and Sixth Circuit cases indicating the propriety of classifying restitution as equitable relief such that it would not interfere with the purposes of a Rule 23(b)(2) certification, persuades the Court that certification pursuant to Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate.

Therefore, the Court certifies the class as requested by Plaintiff as "all persons whose funds were confiscated before conviction under the Hamilton County Pay–to–Stay Program."

## RULE 23(b)(3) CERTIFICATION

■ Even if the Court were to decline to certify the class pursuant to Rule 23(b)(2), certification pursuant to Rule 23(b)(3) is still possible.

Rule 23(b)(3) provides that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and if the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The District Court in *Coleman v. County of Kane*, 196 F.R.D. 505 (N.D.Ill.2000), was presented with facts very similar to those of the case currently before this Court. Here, the Sheriff required any person taken into custody at the Kane County Jail to pay a non-refundable $11 fee to secure his or her pretrial release. *Id.* at 506. Plaintiff moved for class certification as a Rule 23(b)(3) action for damages claiming that the imposition of the "sheriff's fee" violated Illinois law and the United States Constitution. *Id.*

After concluding that the plaintiff's proposed class satisfied the requirements of Rule 23(a), the *Coleman* Court analyzed Rule 23(b)(3). The *Coleman* Court reasoned that former detainees are unlikely and perhaps unable to pursue individual claims of $11 and that proceeding as a class action would prevent duplicative trials and promote efficiency of resources. Thus, the Coleman Court concluded that the proposed class also satisfied the requirements of Rule 23(b)(3).

The Court finds *Coleman* to be particularly persuasive, given its similarity to the instant case and concludes that the class proposed by Plaintiff in the instant case likewise meets the requirements of Rule 23(b)(3). Given the small amount of money of which Defendants deprived each individual class member, it is unlikely that any one individual plaintiff would find it useful to pursue litigation. Thus, a class action is perhaps the only

and clearly the superior method for pursuing a fair and efficient litigation of the controversy at hand. Further, it is clear to the Court that, because each individual plaintiff would be seeking only restitution of the fee paid in and because the only question of law at issue in any of these claims would be the constitutionality of the deprivation, common questions of law and fact prevail.

Therefore, the Court concludes the requirements of Rule 23(b)(3) are satisfied and, as such, it is appropriate for the Court to certify the class pursuant to Rule 23(b)(3) as "all persons whose funds were confiscated before conviction under the Hamilton County Pay–to–Stay Program."

## CONCLUSION

Having reviewed this matter, the Court concludes that the requirements of Rule 23(a) of the Federal Rules of Civil Procedure are met. The Court further finds that certification under both Rule 23(b)(2) and Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate. Therefore, the Court hereby GRANTS Plaintiff's Motion for Class Certification and defines the class as all pretrial detainees whose funds were confiscated before conviction under the Hamilton County Pay–to–Stay Program (doc. 27).

SO ORDERED.